UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

First Integrity Bank, N.A.,                                     Civil No. 07-1434 (DWF/RLE)
a Minnesota corporation,

     Plaintiff and Counter Defendant,

v.                                                                              **MEMORANDUM**
                                                                   **OPINION AND ORDER**

Catherine E. Gempeler,

     Defendant and Counter Claimant.
_____

Cynthia P. Arends, Esq., and Kevin D. Hofman, Esq., Halleland Lewis Nilan & Johnson PA, counsel for Plaintiff and Counter Defendant.

John C. Ekman, Esq., and Randall J. Pattee, Esq., Lindquist & Vennum PLLP, counsel for Defendant and Counter Claimant.
_____

## INTRODUCTION

      This matter came before the Court on October 25, 2007, pursuant to Defendant Catherine E. Gempeler's Motion to Dismiss Complaint or, Alternatively, to Amend Answer and Counterclaim and to Add a Third-Party Complaint. Gempeler's Motion to Dismiss is based on forum non conveniens. In its Complaint, Plaintiff First Integrity Bank, N.A. ("First Integrity") has asserted claims for breach of contract and unjust enrichment. For the reasons set forth below, the Court grants in part and denies in part Gempeler's motion.

## BACKGROUND

      First Integrity is a national banking association with its principal place of business in Stacy, Minnesota. K. Patrick Kruchten is the Chief Executive Officer, Chairman of the

Board of Directors, and the largest shareholder of First Integrity. Bruce Carr is, or was during the relevant time periods, an officer, board member, and/or shareholder of First Integrity.

Kruchten and Carr, along with others, formed Marco Cat, L.L.P. ("Marco Cat") to finance and operate the Olde Marco Inn & Suites ("the Inn") in Marco Island, Florida.[1] TCK, L.L.P. ("TCK") is the managing partner of, and possesses a 51% partnership interest in, Marco Cat. Kruchten is the managing partner of TCK; Carr is a partner in TCK. Marco Associates L.L.P. ("Marco Associates") is the minority partner of, and possesses a 49% interest in, Marco Cat. Kruchten is the managing partner of Marco Associates.

Gempeler, a resident of Madison, Wisconsin, alleges that Kruchten and Carr encouraged and made arrangements for investors, including her, to borrow money from First Integrity to finance investments, which ultimately fostered Kruchten and Carr's interests in Marco Cat and Old Marco Suites. Gempeler also alleges that it was upon Kruchten and/or Carr's recommendation and approval that she borrowed $197,952.48 from First Integrity Bank pursuant to a loan (the "Loan") to purchase an interest in Olde Marco Suites and/or the Inn.[2] The Loan was thereafter modified and extended pursuant to agreement on December 10, 2004, and October 21, 2005. All of the operative loan

---

[1] On or about June 7, 1999, Olde Marco Suites LP ("Olde Marco Suites") was formed with Marco Cat as its managing partner. Olde Marco Suites has since dissolved. The Inn is the primary asset of Marco Cat.

[2] Gempeler's interest included the usage rights of a condo, Unit 409.

documents were issued through First Integrity's office in Staples, Minnesota. Staples is in Todd County.

First Integrity alleges that Gempeler failed to make her payment due on January 21, 2007. Because of this, it demanded the October 21, 2005 and January 21, 2007 payments due. (Compl. ¶¶ 12-14.) First Integrity contends that Gempeler has not made the payments, is in default, and owes First Integrity more than $186,860.46 due under the Loan.

Gempeler asserts that the Inn has not been profitable under Kruchten, Carr, and others' supervision and that she has not made money from her investment. Further, she alleges that although she has lost money in her investment, Kruchten, Carr, and members of Kruchten's family have made money from salaries, fees, real estate acquisitions, and payments from the Inn.

Further, upon the dissolution of Olde Marco Suites, Gempeler alleges that Kruchten and Carr represented to its investors that the sale of the condominiums would allow Marco Cat to pay back all of the investments in Olde Marco Suites. Specifically, Gempeler asserts that on June 29, 2003, Carr advised her in writing that upon the dissolution of Olde Marco Suites, the value of her investment would be paid off, with interest, after the sale of the condominiums. In early 2004, Gempeler was given a choice to either purchase a condominium or accept a debenture for the amount of her investment in Olde Marco Suites. Gempeler chose the debenture option. She alleges that in exchange for her agreement to accept payments to be made to First Integrity, she would

surrender her ownership interest in Unit 409. Gempeler asserts that under the debenture, all amounts owed to her, including all amounts owed on her Loan with First Integrity, would be paid by June 17, 2008.

Gempeler accepted the term sheet and the debenture selection. Thereafter, Kruchten, Carr, and/or Marco Cat sold Unit 409 for $370,000.00. Gempeler asserts that from December 28, 2004, through September 2006, any quarterly payments made to First Integrity under the agreement, as modified, were made directly by Marco Cat.[3] Gempeler also asserts that on September 20, 2006, she received a notice from First Integrity that her quarterly payment for July 2006 was 60 days past due, and, on February 18, 2007, she received a Demand and Notice of Acceleration from First Integrity. Gempeler alleges that First Integrity has not made an attempt to seek payment of any amount owed under the debenture from Marco Cat, Kruchten, or Carr.

On March 6, 2007, First Integrity filed a Complaint alleging breach of contract and unjust enrichment, seeking to recover the amounts due on the Loan. On June 6, 2007, Gempeler filed her Answer and Counterclaim, asserting several affirmative defenses and the following counterclaims: (1) breach of covenant of good faith and fair dealing; (2) fraud; (3) breach of contract; and (4) accounting.[4] Then, in July 2007, Gempeler, along with ten other plaintiffs, filed suit against First Integrity, Kruchten, Carr,

---

[3]   Gempeler asserts that statements from First Integrity show that the last payment received by First Integrity was on May 18, 2006, in the amount of $4,050.20.

[4]   Neither party has asserted a federal claim.

Marco Cat, TCK, Marco Associates, and Olde Marco Suites, in the District Court for the State of Minnesota, Todd County.  There, the plaintiffs asserted the following claims: (1) breach of contract; (2) breach of fiduciary duty; (3) civil conspiracy–breach of contract; (4) civil conspiracy–breach of fiduciary duty; (5) fraud; (6) civil conspiracy–fraud; (7) fraud on certain named plaintiffs; (8) conversion; (9) civil conspiracy–conversion; (10) breach of covenant of good faith and fair dealing; and (11) accounting.

On September 10, 2007, Gempeler filed a Motion to Dismiss Complaint or, Alternatively, to Amend Answer and Counterclaim and to Add a Third-Party Complaint with this Court.  Gempeler asserts that most of the claims asserted in the Todd County action are substantially similar, if not identical, to the counterclaims asserted by Gempeler in this Court.

## DISCUSSION

**I.     Forum Non Conveniens**

Forum non conveniens exists as a method of allowing courts to "resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute."  *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507 (1947).  "Trial courts have broad discretion in deciding a motion to dismiss based on forum non conveniens[.]"  *Reid-Walen v. Hansen*, 933 F.2d 1390, 1393-94 (8th Cir. 1991) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981)).

The United States Supreme Court has outlined a number of private and public factors to be considered by the trial court in making its decision.  The private factors to be

considered include: the private interest of the litigant; relative ease of access to sources of proof; availability of compulsory process for attendance of the unwilling; the cost of obtaining witnesses; the need to view the premises; the enforceability of a judgment; and "all other practical problems that make the trial of a case easy, expeditious, and inexpensive." *Gilbert*, 330 U.S. at 508. The court must also consider public factors, which include: the burden of jury duty on the local community; the local interest in having the matter decided at home; congestion in courts; and the difficulty in applying foreign law. *Id.* at 508-09. The balance must be strongly in favor of the defendant in order to upset plaintiff's choice of forum. *Reid-Walen*, 933 F.2d at 1394 (citing *Lehman v. Humphrey Cayman, Ltd.*, 713 F.2d 339, 342 (8th Cir. 1983)). Therefore, "[t]he defendant has the burden of persuasion in proving all elements necessary for the court to dismiss a claim based on forum non conveniens." *Id.* at 1393.

Here, Gempeler asserts that, taking into account the Amended Answer, the private factors weigh heavily in support of Todd County as the forum. Specifically, Gempeler asserts that the relative ease of access to sources of proof and witnesses, and all other practical problems weigh in her favor because (1) the operative loan documents were generated through First Integrity's office in Todd County; (2) the relevant witnesses are generally located in Todd County; and (3) any resolution of her defenses and claims against First Integrity will include fact-finding regarding Marco Cat, Kruchten, and Carr. As to the latter, Gempeler further asserts that because the Todd County action will proceed on behalf of the other ten plaintiffs against First Integrity, Kruchten, Carr, and

the other Marco entities, maintaining two cases would cause duplicative discovery, depositions, and testimony. In addition to Gempeler's assertion that several witnesses will be subjected to this additional burden, time, and expense, Gempeler also asserts that allowing all parties to proceed with all of their claims in the Todd County action would serve judicial efficiency.

Gempeler also asserts that the public factors weigh in favor of Todd County as the forum because of the same duplication issues. In addition, Gempeler contends that this Court's jury pool does not include Todd County residents, and therefore, by dismissing the Complaint, the people of this Court's community, who have little relationship to the litigation, will not be burdened by jury duty.[5] Further, Gempeler argues that dismissal will promote the public interest in having localized controversies settled at home.

First Integrity, on the other hand, asserts that neither the private nor public interest factors favor dismissal. First Integrity maintains that the access-to-proof factor does not favor dismissal because even though some of the documents and witnesses are located in Todd County, others are located out-of-state (*i.e.*, Florida). In addition, First Integrity asserts that all of the attorneys for the parties are located in the Twin Cities. Further, First Integrity contends that because the state and federal courthouses are only 140 miles apart, the state courthouse does not offer substantially more convenience than the federal

---

[5]    The Court notes that it could choose to venue trial in the Fergus Falls federal courthouse and pull the jury from that community.

courthouse.[6] As for Gempeler's argument regarding duplicity, First Integrity asserts that some duplication of effort does not justify dismissal.

Regarding the public interest factors, First Integrity contends that the burdening-of-jury-duty factor does not apply here because that factor only applies when one of the jurisdictions-at-issue is either a foreign state or a foreign country. First Integrity also asserts that Gempeler has offered no evidence that the congestion or administrative difficulties faced by this Court are different from or greater than those of the Todd County court. As for the public policy in deciding local controversies at home, First Integrity asserts that the District of Minnesota is also a "home" venue for this case. In addition, First Integrity asserts that other courts have found that where the alternative forum is a state court, dismissal should occur in rare and exceptional circumstances only, and that because rare and exceptional circumstances are not present here, dismissal should be denied.

In response, Gempeler asserts that this is a rare and exceptional case requiring dismissal. Specifically, Gempeler points out that this Court has jurisdiction based on diversity grounds only, with no federal question raised in any of the claims. In addition, she asserts that the allegations in this dispute, with the inclusion of her affirmative defenses, are identical to the allegations pending in the Todd County action, and that because of the similar allegations alleged in both actions, there will be duplication of

---

[6] In response, Gempeler asserts that her motion is not based on the distance between the two courthouses, but rather on the duplicity and inconvenience of having to sit for multiple depositions and trials.

evidence, discovery, and motion practice.  Further, Gempeler highlights the fact that, unlike most cases where courts have denied a motion to dismiss where the relative burden on each party is balanced, this case is different because the end result is that two litigations would exist litigating identical facts and law.

The United States Supreme Court has recognized that deference should be afforded to plaintiff's choice of forum.  *Gilbert*, 330 U.S. at 508.  As such, the Court has stated, "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."  *Id*.  The Court finds that most of the private and public interest factors are either inapplicable to this case or do not weigh heavily in favor of either party.  Here, witnesses and sources of proof are likely to be drawn from Minnesota.  Further, the Court finds that the burden of jury duty on the local community, the local interest in having the matter decided at home, and the issues of congestion in the courts are neutral because the Court could pull a jury pool from the Fergus Falls area if it so chooses, both venues would result in the matter being decided at "home," and there has been no evidence showing that either court has an issue with congestion.  The Court acknowledges the potential for duplication in discovery, depositions, and trial testimony.  However, the Court believes that with open communication channels and cooperation between itself, the judge in Todd County, and the parties, duplication can be kept to a minimum.  Therefore, based on the Court's analysis of all of the factors, the Court finds that Gempeler has not met her burden in proving that the balance is "strongly in favor of the defendant."  *Reid-Walen,* 933 F.2d at 1394.  None of the factors raised by Gempeler,

either individually or in totality, justify this Court ignoring First Integrity's choice of forum. Therefore, Gempeler's Motion to Dismiss for forum non conveniens is denied.

**II.     Motion to Amend**

Alternatively, Gempeler asks the Court to grant her leave to amend her Answer and Counterclaim and to add a Third-Party Complaint. Where the parties have exchanged their initial round of pleadings as they have done here, Federal Rule of Civil Procedure 15 describes the appropriate procedure for amending a pleading:

> [A] party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

Fed. R. Civ. P. 15(a). In regard to a party's Rule 15 motion to amend, the United States Supreme Court has stated:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Roberson v. Hayti Police Dept.*, 241 F.3d 992, 995 (8th Cir. 2001) (citing *Foman*, 371 U.S. at 182). In addition, the Court avowed that "[t]he Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Foman*, 371

U.S. at 181-82 (quotations omitted). Therefore, "[g]iven the courts' liberal viewpoint towards leave to amend, it should normally be granted absent good reason for a denial." *Popp Telcom v. Am. Sharecom, Inc.*, 210 F.3d 928, 943 (8th Cir. 2000).

When a party opposes an amendment based on futility, "the standard applied is the same as that invoked in a Motion to Dismiss." *Upsher-Smith Labs., Inc. v. Mylan Labs., Inc.*, 944 F. Supp. 1411, 1441-42 (D. Minn. 1996) (citing cases).

As to adding a third-party complaint, Rule 14 provides in relevant part:

> **(a) When Defendant May Bring in Third Party.** At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff . . . . The plaintiff may assert any claim against the third-party defendant arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff . . . .

Fed. R. Civ. P. 14(a).[7] "Rule 14(a) allows a defendant to assert a claim against any person not a party to the main action only if that third person's liability on that claim is in some way dependent upon the outcome of the main claim." *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 698 (8th Cir. 2003).

---

[7] "Persons other than those made parties to the original action may be made parties to a counterclaim or cross-claim in accordance with the provisions of Rules 19 and 20." Fed. R. Civ. P. 13(h).

Gempeler asserts that she has not engaged in any undue delay or bad faith, that her proposed amendments are not futile,[8] and that no prejudice would result from allowing the Amended Answer.  Specifically, Gempeler points out that the Scheduling Order required any motion to amend to be heard by November 1, 2007, which is consistent with the timing of this motion, and discovery does not close until April 1, 2008.  Gempeler also asserts that both the Court and opposing counsel were aware of Gempeler's intent to file this motion, as she advised them of such in her Statement of the Case and during the pretrial conference.

First Integrity contends that Gempeler's Motion to Amend should be denied because her proposed Third-Party Complaint asserts claims that are independent of First Integrity's claims against Gempeler (meaning they do not derive from or depend on potential liability that Gempeler has to First Integrity) and therefore violates third-party practice rules.  In addition, citing *Nordale, Inc. v. Samsco, Inc.*, 830 F. Supp. 1263, 1270 (D. Minn. 1993), First Integrity asserts that Gempeler's proposed conspiracy to commit breach of contract claim against First Integrity is futile because it is not predicated upon a criminal act or an intentional tort.

In response, Gempeler points out that she does allege that Kruchten, Carr, and Marco Cat are liable to her for the amounts that are allegedly owed by her to First Integrity.  Specifically, Gempeler states:

---

[8] Gempeler asserts that her proposed amendments state viable legal claims that are based on detailed and substantial allegations.

> [T]hese individuals and entities entered into a contract that was intended to satisfy her loan with [First Integrity], that [First Integrity]—without any request from defendant—modified the terms of her loan consistent with her contract with Kruchten, Carr, and Marco Cat, and that Marco Cat made payments on that contract directly to [First Integrity] as part of that separate agreement.

(Def.'s Reply Mem. in Supp. of Mot. to Dismiss Compl. or, Alternatively, to Amend Answer and Countercl. and to Add Third Party Compl. at 7.)  Gempeler therefore maintains that her Counterclaim and Third-Party Complaint asserts claims that arise from the same series of transactions involving First Integrity, Kruchten, Carr, and Marco Cat. These transactions began with the recommendations made to Gempeler to fund her investment in Olde Marco Suites and continued through the alleged breach by Kruchten, Carr, and Marco Cat to pay the amount owed to First Integrity on Gempeler's loan.  In addition, Gempeler asserts that to the extent that her claims in her Third-Party Complaint would go beyond that allegedly owed on her loan with First Integrity, it would not make sense to litigate those certain claims separately.

Gempeler also asserts that her proposed conspiracy to commit breach of contract claim against First Integrity is not futile.  Citing *SICK, Inc. v. Motion Control Corp.*, No. 01-1496, 2003 WL 21448864, at *11 (D. Minn. June 19, 2003) (citing cases)), Gempeler contends that Minnesota courts have indicated that breach of contract may serve as the basis for a civil conspiracy claim.

The Court agrees with Gempeler.  Here, there has been no showing that her proposed amendments will create undue delay or undue prejudice to First Integrity, nor is

13

there evidence of bad faith or dilatory motive on the part of Gempeler. Therefore, given the liberal amendment rules, the Court concludes that both parties should be allowed to fully resolve all disputes relating to Gempeler's loan and investment here. Moreover, given the allegation that Kruchten, Carr, and Marco Cat entered into a contract to make the payments owed to First Integrity, the Court finds that Gempeler has alleged a legal theory under which these third parties could be liable to indemnify her for her loan obligation. Therefore, she has met the Rule 14 standard that the proposed third person's liability on a claim is in some way dependent upon the outcome of the main claim. Thus, for the above stated reasons, the Court grants Gempeler's Motion to Amend Answer and Counterclaim and to Add a Third-Party Complaint.[9]

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion to Dismiss Complaint or, Alternatively, to Amend Answer and Counterclaim and to Add a Third-Party Complaint The Motion to Dismiss (Doc. No. 23) is **GRANTED IN PART** and **DENIED IN PART** as follows:

    a. Defendant's Motion to Dismiss Complaint (Doc. No. 23) is **DENIED**.

---

[9] The Court notes that *SICK, Inc. v. Motion Control Corp.* does indicate that a breach of contract may serve as the basis for a civil conspiracy claim. 2003 WL 21448864, at *11. Therefore, at this time, the Court concludes that Gempeler's claim is not futile.

   b.  Defendant's Alternative Motion to Amend Answer and Counterclaim and to Add a Third-Party Complaint (Doc. No. 23) is **GRANTED**.

Dated:  November 26, 2007    s/Donovan W. Frank
                DONOVAN W. FRANK
                Judge of United States District Court